UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**KEVIN BONFARDINE,**

    Plaintiff,

v.                                         **CASE NO.: 3:21cv4478-TKW/EMT**

**GEO SECURE SERVICES, LLC,**

    Defendant.

_____/

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, KEVIN BONFARDINE, hereby sues Defendant, GEO SECURE SERVICES, LLC, and alleges:

## JURISDICTION

1. This is an action brought under 42 U.S.C. §1981. Attorneys fees are sought under 42 U.S.C. §1988.

2. This is an action involving claims which are, individually, in excess of Thirty Thousand Dollars ($30,000.00).

## THE PARTIES

3. At all times pertinent hereto, Plaintiff, KEVIN BONFARDINE, was a resident of the State of Florida and employed by Defendant. Plaintiff is a member of a protected class because of his race (black).

4. At all times pertinent hereto, Defendant, GEO SECURE SERVICES, LLC, conducted business in the State of Florida, and within the jurisdictional boundaries of this court. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant is Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

5. Plaintiff has satisfied all conditions precedent to bringing this action.

## STATEMENT OF FACTS

6. Plaintiff began his employment with Defendant on June 13, 2016 and, at all times pertinent to this action, worked as a Certified Correctional Officer at Defendant's Correctional Facility in Milton, Florida. He was working there when his employment was terminated on or about January 22, 2018.

7. Plaintiff was subjected to disparate treatment, different terms and conditions of employment, and held to a different standard because of his race.

8. Plaintiff, who was successfully employed by Defendant for over a year and a half prior to his termination, was qualified for his position, and remained qualified to continue working in his position following the termination of his employment. Plaintiff was ready, willing, and able to return to work at the time of his unexpected termination.

2

9. Plaintiff had no disciplinary action prior to the unlawful termination of his employment, and received high marks on his evaluations leading up to termination.

10. Despite Plaintiff's qualifications and record, he was never awarded a supervisory position which he applied for on three separate occasions –the positions were awarded to white employees instead of Plaintiff each and every time.

11. Correctional officers with Defendant are expected to supervise about three hundred inmates. Defendant stationed Plaintiff in one of the most dangerous dorms where violent inmates are housed. While Plaintiff was stationed there, Defendant stationed one new, non-certified correctional officer, in the control room for a total of one month.

12. Defendant violated their own policy by assigning a non-certified officer to the control room, and thus created an even more dangerous situation for Plaintiff. Defendant staffed the dorm in such a manner that Plaintiff was the only certified officer working therein, which created a dangerously unworkable situation for Plaintiff.

13. Because the non-certified officers did not know how to operate the control room equipment, it fell on Plaintiff's shoulders to both maintain order within the dorm by de-escalating violent inmate outbursts, *and* perform the control room

duties –Plaintiff was working in the most dangerous dorm, and also working double duty.

14. For example, on or around December, 2017, there was a fight in the dorm. Inmates were hitting each other with combination locks tied to the ends of socks. Plaintiff was inside the dorm, calling for a response from the control room and attempting to deescalate the situation. Plaintiff could not deescalate the situation, however, because he had to run into the control room to help the noncertified officers work the controls, putting his life at risk.

15. On or around January 10, 2018, which turned out to be Plaintiff's last day working in Defendant's facility, Plaintiff was involved in an Alpha Response Call regarding an officer in distress. Upon his arrival, he saw that an inmate was on top of female Officer Moore, who was screaming that she was stabbed by the inmate. Plaintiff separated the inmate from Officer Moore with the assistance from other white officers.

16. Plaintiff was the only black officer involved in the Alpha Response Call –every other officer was white. Officer Daniel Young, a white man, assisted Plaintiff with securing the improvised weapon from the inmate, moved the inmate to the walkway, and restrained the inmate.

17. Three other white officers, Officers Simmons, Bachtel, and Sergeant Griner also responded and helped restrain the inmate. These officers placed the

offending inmate in a wheelchair which Officer Griner then intentionally and maliciously flipped him out of several times. Officers Simmons and Bachtel, and Sergeant Griner took the inmate to confinement, and put him in the shower. Matter Control Operator Heidi Williams later reported that Simmons, Bachtel, and Griner physically abused the inmate in the process.

18. All of the other white officers involved in the Alpha Response Call were white, certified, and reported to Captain Williams at the time.[1]

19. Plaintiff was unable to draft a contemporaneous incident report because he was immediately transferred to urgent care due to the injuries he sustained while assisting Officer Moore.

20. Defendant then inexplicably placed Plaintiff on administrative leave pending an investigation. None of the white officers were placed on administrative leave.

---

[1] Contrary to the assertions in Defendant's Motion to Dismiss, (ECF No. 6) this level of pleading detail is not necessary to avoid dismissal, but included nonetheless in response to Defendant's Motion. Defendant cites numerous summary judgment cases in support of their position, all of which are wholly inappropriate at this stage of the proceedings. It is well settled that summary judgment and motions to dismiss are procedurally different, with their own respective standards. *Rustland et. al. v. Version,* 8:21-CV-1518-WFJ-AAS, 2021 WL 3773425, (M.D. Fla. 2021), *Wells Fargo Bank, N.A. v. Bohatka*, 112 So. 3d 596, 604 (Fla. 1st DCA 2013), *Behnam v. Zadeh*, 132 So. 3d 951, 952 (Fla. 1st DCA 2014), *Taylor v. Lockett*, 5:17-CV-23-OC-10PRL, 2018 WL 11252668, at *4 (M.D. Fla., 2018). Defendant's argument also appears to completely ignore the fact that Plaintiff may prove his case by other means such as a convincing mosaic, and without any comparators at all.

21. Defendant treated white officers more favorably than it treated Plaintiff during the course of the investigation. The white officers who were both involved in separating the inmate from Officer Moore, and physically abusing the offending inmate, suffered no adverse action whatsoever.

22. On or around January 19, 2018, Plaintiff spoke with Investigator Matt Enfinger of the Florida Department of Law Enforcement, and provided a statement regarding the attack on Officer Moore. Enfinger later called Plaintiff and informed him that he was cleared of wrongdoing. Enfinger also shared with Plaintiff that he notified Defendant of the clearance, and of Plaintiff's resultant eligibility to return to work.

23. Instead of returning Plaintiff to work following Enfinger's clearance, Defendant terminated Plaintiff's employment on or about July 22, 2018 while Plaintiff was still inexplicably on administrative leave. Defendant never gave Plaintiff any indication that the termination of his employment was a possibility, and none of the white officers who were involved in the same incident experienced any adverse action.

24. Plaintiff suffered lost wages, was blacklisted from all adult corrections facilities in the area, and fell into a state of depression. Plaintiff was unable to find a job, suffered extreme stress due to this, and was unemployed for about two and a half months before he was able to find a part time job in a different field.

25. Plaintiff retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the statutes referenced above.

## COUNT I
## RACE DISCRIMINATION

26. Paragraphs 1 through 25 are re-alleged and incorporated herein by reference.

27. This is an action against Defendant for discrimination based upon race brought under 42 U.S.C. §1981.

28. Plaintiff was the victim of discrimination on the basis of his race in that he was treated differently than similarly situated white employees of Defendant and has been subject to hostility and poor treatment on the basis, at least in part, of his race.

29. Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

30. Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

31. Defendant's known allowance and ratification of these actions and inactions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

32. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a race-based nature and in violation of the laws set forth herein.

33. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.

34. The events set forth herein led, at least in part, to Plaintiff's termination.

35. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon race in violation of 42 U.S.C. §1981.

36. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay,

interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c) enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d) enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e) enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f) award Plaintiff interest where appropriate; and

(g) grant such other further relief as being just and proper under the circumstances including reinstatement.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

Respectfully submitted,

_____
Adam Ellis; FBN 35628
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL   32301
Telephone:  (850) 383-4800
Facsimile:   (850) 383-4801
adam@mattoxlaw.com
ATTORNEYS FOR PLAINTIFF